UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-22124

JOSELYN POSTAR,

     Plaintiff,

v.

MSC CRUISES, S.A.,

     Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, JOSELYN POSTAR (hereinafter "MS. POSTAR"), through undersigned counsel, sues Defendant, MSC CRUISES, S.A., (hereinafter "MSC"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1.    MS. POSTAR seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by MSC.

5.    MS. POSTAR is *sui juris* and is a resident and citizen of the state of Florida.

6.     MSC is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

7.     MSC is a citizen of the State of Florida and the nations of Italy and Switzerland.

8.     MSC, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a.     Operated, conducted, engaged in, or carried on a business venture; and/or

    b.     Had an office or agency; and/or

    c.     Engaged in substantial activity; and/or

    d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the flooring, the flooring material, the flooring polish, the marble, the handrail, the space between the bathtub/shower combination and/or glass and/or flooring, the space between the half-divide of glass and/or less than half-divide of glass and/or the ceiling, the floor-towel, the water, the bathtub/shower combination, the half-divide and/or less than half-divide of glass between the bathtub/shower combination and/or all material and effects pertaining thereto, including the lighting, drainage, design, visual condition, and/or any other material pertaining to the bathroom area and/or vicinity and/or area.

11.   At all times material hereto, MSC owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Divina*.

12.   At all times material hereto, MSC owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in MS. POSTAR'S incident.

13.   MS. POSTAR'S incident occurred on or about March 7, 2022, while she was a fare paying passenger on MSC'S vessel – the *Divina*.

14.   On or about March 7, 2022, the first morning of the cruise, MS. POSTAR showered in the bathtub/shower combination in her bathroom in cabin number 15025 located on deck 15 in the MSC Yacht Club, finished showering, and attempted to exit the bathtub/shower combination. However, as she carefully exited the bathtub/shower combination onto the marble flooring and/or the small floor-towel while she held the handrail, the water that accumulated from the bathtub/shower combination because of the inadequately short glass barrier lacking coverage and/or due to other factors failed to prevent water from escaping the bathtub/shower combination onto the marble floor – thereby making the floor unreasonably slippery (in addition to other reasons), which caused her to fall and sustain permanent injuries.

15.   On the day after her fall, on or about March 8, 2022, the MSC Yacht Club cabin steward, MSC'S employee, took MS. POSTAR to the medical center for treatment in a wheelchair.

16.   Additionally, the cabin steward placed a slip-resistant mat on the bathroom floor that did not come standard with the cabin initially (MSC only provided a small and slippery bath-towel initially, despite availability of a slip-resistant mat already onboard).

17.   As a result, MS. POSTAR suffered severe injuries, including, but not limited to, injuries to her right knee, leg, hip, back, shoulder, pelvis, torn and medially extruded medial meniscus, fraying of the posterior and free edge of lateral meniscus, medial and patellofemoral

chondromalacia, spondylosis with radiculopathy (lumbar region), sprain of ligaments of lumbar spine, tissue damage, lower back sprain, left SIJ left lumbar paraspinals, and shoulder requiring surger(ies), knee replacement, scarring, disfigurement, ongoing physical therapy, and chronic pain.

18.    After MS. POSTAR'S fall, MSC'S shipboard physician, also an employee of MSC, treated her although she remained on the ship and did not disembark, which delayed her treatment and caused her to experience prolonged and increased pain, suffering, and other injuries.

19.    At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

   a.   The unreasonably slippery and/or unstable subject marble flooring; and/or

   b.   The unreasonably slippery and/or unstable subject railing; and/or

   c.   Unreasonably slippery railings and/or slippery flooring and/or small floor-towel in the subject bathroom area lessened MS. POSTAR'S control over her fall from the bathtub/shower combination and onto the subject flooring and/or floor-mat caused the fall; and/or

   d.   Inadequate and/or lack of barrier(s) separating the bathtub/shower combination from the marble flooring, which failed to prevent pooled water on the floor and lessened MS. POSTAR'S control over her fall from the bathtub/show combination and onto the subject flooring; and/or

   e.   MS. POSTAR attempted to stabilize herself with the railing to control her fall on the unreasonably slippery floor from the bathtub/shower combination, but the inadequate floor-towel and/or significant amount of water due to the inadequate glass barrier and/or other factors failed to prevent and/or mitigate her incident, including, but not limited to, the unreasonably short glass barrier

to prevent water and/or slippery railing(s) and/or slippery flooring; and/or

f.  The unreasonably dangerous amount of space between the bathtub/shower combination and the flooring and/or ceiling and/or wall lacked an adequate barrier to keep the accumulated water in the bathtub/shower combination and off the marble floor, which caused MS. POSTAR'S fall; and/or

g.  Unreasonably short and/or the inadequate glass barrier between the bathtub/shower combination and the marble flooring and/or wall in the subject bathroom caused her injuries; and/or

h.  The unreasonably poorly maintained subject area; and/or

i.  The unreasonably poorly maintained subject bathtub/shower combination and/or railing and/or flooring and/or lack of a slip-resistant-mat; and/or

j.  The uneven and/or unstable bathtub/shower combination and/or flooring and/or railing and/or glass-barrier and/or wall lacked uniformity in dimensions, which unreasonably hindered MS. POSTAR'S ability to exit safely from the subject bathtub/shower combination; and/or

k.  The contents of the subject flooring and/or railing and/or floor-towel lacked adequate slip resistant material; and/or

l.  The bathtub/shower combination and/or glass-barrier and/or railing and/or marble flooring and/or bathroom area during MS. POSTAR'S impact and/or fall lacked adequate visual cues to help passengers see the bathroom's unreasonable configuration, as well as the lack of any safeguards to prevent the towel-mat from sliding on wet-floors and/or slippery floors and/or slippery railing(s) and/or other object(s) (such as conspicuous visual cues); and/or

m.  Inadequate warnings in the subject area; and/or

n.  MSC did not reasonably train crew members to adequately secure a slip-resistant mat in each cabin's bathroom area; and/or

o.  MSC failed to ensure that bathrooms in cabins included adequate barriers to prevent accumulated water from creating unreasonably slippery floors; and/or

p.  MSC failed to ensure that bathrooms in cabins included slip-resistant flooring and/or proper drainage to prevent accumulated water from creating unreasonably slippery floors; and/or

q.  The bathtub/shower combination and/or glass barrier and/or marble flooring and/or bathroom area should not have been used until it was safe for passengers' use; and/or

r.  People fell while exiting these bathtub/shower combinations prior to MS. POSTAR'S incident for similar reasons as MS. POSTAR, including other passengers whom MS. POSTAR and her husband spoke with while on the subject cruise; and/or

s.  The subject bathtub/shower combination and/or glass barrier and/or flooring did not have the proper part(s) and/or device(s) to prevent accumulated water during passenger use; and/or

t.  Other dangerous conditions that will be revealed through discovery.

20.  Each of these dangerous conditions alone was sufficient to cause MS. POSTAR'S incident and injuries, and MS. POSTAR alleges that MSC was negligent as to each of these conditions separately and not cumulatively.

21. MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a. MS. POSTAR previously observed MSC'S crew members regularly use and/or observe and/or tend to the subject bathroom area (i.e., cabin steward(s) cleaning the bathroom area), and MS. POSTAR recalls seeing the crew member(s) use and/or observe the bathroom area on at least one (1) occasion, if not more, on the first day of the cruise and at the time of her incident, and in the immediate vicinity, such that MS. POSTAR reasonably infers that the crew member(s) regularly used and/or tended to and/or observed the bathroom area and therefore had familiarity or should have been familiar with the dangerous and/or risk-creating conditions thereof, and should have been aware of the dangerous conditions and warned of and/or removed the dangerous conditions. *See Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018) ("In some cases the proprietor may be held to have constructive knowledge if . . . an employee of the proprietor was in the immediate area of the dangerous condition and could have easily seen . . . the hazard.") (*citing Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327, 330 (1980).

b. **<u>After</u>** MS. POSTAR'S incident, MSC put down a slip-resistant mat with adequate material – instead of the small-towel that failed to remain secure on the unreasonably slippery bathroom floor. The fact that MSC placed matt with an adequate slip resistance on the bathroom floor after her incident, which existed on the ship the entire time yet remained absent in the bathroom upon initial arrival, shows that MSC knew (or realized after the incident that MSC should have known) that the subject bathroom floor was dangerous such that MSC believed that a mat with slip resistance to prevent

it from sliding was safer for MS. POSTAR and/or for passengers exiting the bathtub/shower combination. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020) ("Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition.").

c. **After** MS. POSTAR'S incident, her husband observed the inadequate glass barrier failing to contain water due to the lack of barrier and/or unreasonably slippery material of the flooring and/or amount of uncontained water and/or other factors. MSC knew and its employee(s) observed that the subject barrier and/or flooring and/or small floor-towel and/or bathroom area was dangerous, but a reasonable person would not have been able to prevent a slip-and-fall incident.

d. Furthermore, the dangers were and/or should have been known prior to MS. POSTAR'S incident because her husband and other passengers observed the inadequate barrier fail to keep the water contained within the bathtub/shower combination and/or prevent it from splashing onto the bathroom floor during use after MS. POSTAR'S incident such that MSC should have been familiar with the dangers thereof, and MSC should have been aware of these conditions ever since it took possession of the subject bathtub/shower combination, glass barrier, flooring, railing(s), ship, bathroom, and area.

e. MS. POSTAR saw after she fell that the water continued to accumulate on the bathroom floor, such that it appeared unreasonably dangerous for any passenger.

f. MSC'S ship possessed slip-resistant mats that fit inside the bathroom area on the *Divina*, including, but not limited to the slip-resistant mat that the cabin steward placed there later, which although available on the ship did not become accessible

until later (unlike the slippery and inadequate floor-towel, present in the bathroom upon arrival). *See Carroll v. Carnival Corp*., 955 F.3d 1260, 1265 (11th Cir. 2020) ("Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition.").

g.  MSC'S other ships, including, but not limited to other cabins on the *Divina*, include showers with a safer standard glass-barrier in the cabin bathrooms – with full coverage between the shower and the bathroom flooring and/or wall and/or without the accumulated water creating unreasonably dangerous slippery floors, and/or without a bathtub/shower combination – as these safer bathrooms and/or features prevent accumulated water and/or unreasonably dangerous slippery flooring, unlike the unreasonably dangerous and/or unstable bathroom area in the subject cabin. *Id*.

h.  Upon information and belief, MSC participated in the installation and/or design of the subject cabin, or alternatively, MSC accepted the cabin with this bathtub/shower combination and/or inadequate barrier and/or unreasonably slippery flooring with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject bathroom, such that MSC should have known of the design defects of the subject bathroom before providing it for public use. These design defects include, but are not limited to, the structural dangers outlined in paragraph 19 of this Complaint. *See Francis v. MSC Cruises, S.A.*, 835 F. App'x 512, 517–18 (11th Cir. 2020) (pleading that, "[c]hoosing and/or approving" a material and "failing to inspect" it to discover it was unreasonably dangerous to make it safer sufficiently alleged negligent design or maintenance to meet notice pleading requirements under the Federal Rules of Civil Procedure) (*citing Palm Beach Golf*

*Center-Boca, Inc., v. John G. Sarris*, 781 F.3d 1245, 1260 (11th Cir. 2015) (noting that a complaint "need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

i.  Upon   information   and   belief,   there   are   relevant   safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 19 of this Complaint, and MSC should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for MSC to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable Defendant should have done. *See Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1356 (S.D. Fla. 2015) ("As previously noted, 'the law in the Eleventh Circuit . . . is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence.' *Cook*, 2012 WL 1792628, at *3 (*citing Muncie Aviation Corp.*, 519 F.2d 1178; Frazier, 568 F.2d 378); *see also Giorgio*, 2006 WL 1042003, at *2. **Such guidelines are also probative of the defendant's constructive knowledge of the allegedly hazardous condition.**'") (emphasis added) (*citing Cook*, 2012 WL 1792628, at *3; *Donlon*, 2011 WL 6020574, at *6)).

j.  MSC also knew or should have known of these dangerous conditions through inspecting the subject area involved in MS. POSTAR'S incident, and if it did not know of these dangerous conditions, this was because MSC failed to adequately inspect the subject area prior to her incident. *See Francis v. MSC Cruises, S.A.*, 835 F. App'x 512,

517 – 18 (11th Cir. 2020) ("Francis's complaint alleged that MSC breached its duty to her by, among other things, '[c]hoosing and/or approving . . . material that was unreasonably slippery,' '[c]hoosing and/or approving . . . material that was unreasonably slippery . . . and 'failing to reasonably inspect . . . material, discover it was unreasonably slippery, and make it safer.' Doc. 1 at 8. **Francis alleged theories of negligent design or maintenance sufficient to meet the notice pleading requirements of the Federal Rules of Civil Procedure**.") (emphasis added, citation omitted) (*citing Palm Beach Golf Center-Boca, Inc. v. John G. Sarris*, 781 F.3d 1245, 1260 (11th Cir. 2015) (noting that a complaint "need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

k.   Moreover, MSC knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

22.   At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

23.   The subject area and the vicinity lacked adequate safety features to prevent MS. POSTAR'S fall and/or impact.

24.   These hazardous conditions were known, or should have been known, to MSC in the exercise of reasonable care.

25.   These hazardous conditions existed for a period of time before the incident.

26.   These conditions were neither open nor obvious to MS. POSTAR.

27.   At all times relevant, MSC failed to adequately inspect the subject area and the vicinity for dangers, and MSC failed to adequately warn MS. POSTAR of the dangers.

28.     At all times relevant, MSC had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so, such that people, including MS. POSTAR, hit the floor and/or fell.

29.     At all times relevant, MSC failed to maintain the subject area and the vicinity in a reasonably safe condition.

30.     At all times relevant, MSC participated in the design and/or approved the design of the subject area and the vicinity involved in MS. POSTAR'S incident.

31.     At all times relevant, MSC participated in the installation and/or approved the installation of the subject area and the vicinity involved in MS. POSTAR'S incident.

32.     The crewmembers of the *Divina* were in regular full-time employment of MSC and/or the ship, as salaried crewmembers, subject to the ship's discipline and master's orders.

33.     MSC had the right to hire and fire their employees and/or agents.

34.     MSC is directly responsible and liable for their actions and the actions of its employees and/or agents.

35.     The crew members, including the medical staff, were employees and/or actual agents and/or apparent agents of MSC, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

36.     The crew members were represented to MS. POSTAR and the ship's passengers as employees of MSC through signs, documents, and/or uniforms. The crew members were also paid salary and/or hourly wage by MSC. MSC knew that the crew members represented themselves to be employees of MSC and allowed them to represent themselves as such. MS. POSTAR detrimentally relied on these representations as she would not have proceeded on the subject cruise had she believed the crewmembers were not employees of MSC.

## COUNT I
## <u>NEGLIGENT FAILURE TO INSPECT</u>

37.   MS. POSTAR hereby adopts and re-alleges each and every allegation in paragraphs 1 through 36 as if set forth herein.

38.   MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

39.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

40.   At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC breached the duty of reasonable care owed to MS. POSTAR and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 19 of the instant Complaint were present at the time of MS. POSTAR'S incident.

41.   MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 21 of the instant Complaint.

42.   These risk-creating and/or dangerous conditions were caused by MSC'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

43.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear

due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

44.    MSC'S negligence proximately caused MS. POSTAR great bodily harm in that, but for MSC'S negligence, MS. POSTAR'S injuries would not have occurred.

45.    As a result of MSC'S negligence, MS. POSTAR has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, loss of the value of her vacation, cruise, and transportation costs.

46.    The losses are permanent and/or continuing in nature.

47.    MS. POSTAR suffered these losses in the past and will continue to suffer such loses in the future.

48.    **WHEREFORE**, Plaintiff, JOSELYN POSTAR, demands Judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MS. POSTAR will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of MS. POSTAR'S vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

49.    MS. POSTAR hereby adopts and re-alleges each and every allegation in paragraphs through 36, as if set forth herein.

50.    MSC owed a duty to exercise reasonable care under the circumstances for the safety

of its passengers.

51.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject area and the vicinity.

52.   At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC, breached the duty of reasonable care owed to MS. POSTAR and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 19 of the instant Complaint were present at the time of MS. POSTAR'S incident.

53.    MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 21 of the instant complaint.

54.   Moreover, these risk-creating and/or dangerous conditions were caused by MSC'S failure to adequately maintain the subject area and the vicinity.

55.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

56.   MSC'S negligence proximately caused MS. POSTAR great bodily harm in that, but for MSC'S negligence, her injuries would not have occurred.

57.   As a result of MSC'S negligence, MS. POSTAR has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of independence, expense of hospitalization, medical and nursing

care and treatment, lost wages, loss of future earning capacity, loss of the value of her vacation, cruise, and transportation costs.

58.   The losses are permanent and/or continuing in nature.

59.   MS. POSTAR has suffered these losses in the past and will continue to suffer such losses in the future.

60.   **WHEREFORE**, Plaintiff, JOSELYN POSTAR, demands Judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MS. POSTAR will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of her vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## NEGLIGENT FAILURE TO REMEDY

61.   MS. POSTAR hereby adopts and re-alleges each and every allegation in paragraphs 1 through 36 as if set forth herein.

62.   MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

63.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

64.   At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC, breached the duty of reasonable care owed to MS. POSTAR and were negligent by failing

to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 19 of the instant Complaint were present at the time of MS. POSTAR'S incident.

65.   MSC either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 21 of the instant Complaint.

66.   Moreover, these risk-creating and/or dangerous conditions were caused MSC'S failure to adequately remedy the subject area.

67.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

68.   MSC'S negligence proximately caused MS. POSTAR great bodily harm in that, but for MSC'S negligence, her injuries would not have occurred.

69.   As a result of MSC'S negligence, MS. POSTAR has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, and loss of future earning capacity, loss of the value of her vacation, cruise, and transportation costs.

70.   The losses are permanent and/or continuing in nature.

71.   MS. POSTAR has suffered these losses in the past and will continue to suffer such losses in the future.

72.   **WHEREFORE**, Plaintiff, JOSELYN POSTAR, demands Judgment against

Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MS. POSTAR will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of her vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION**

73.    MS. POSTAR hereby adopts and re-alleges each and every allegation in paragraphs 1 through 36 as if set forth herein.

74.    At all times relevant, MSC owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including MS. POSTAR.

75.    Such duty includes, but is not limited to, the duty that MSC owes to warn passengers of any dangers that it knew or should have known were not open and obvious to MS. POSTAR.

76.    Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

77.    At all times material, MSC, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with MSC, breached the duty of reasonable care owed to MS. POSTAR and was negligent by failing to warn MS. POSTAR of the dangerous conditions discussed in paragraph 19 of the instant Complaint.

78.    Furthermore, MSC knew or should have known of these dangerous conditions for the reasons discussed in paragraph 21 of this Complaint.

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 18 of 35**

79.   These dangerous conditions were also created by MSC.

80.   MSC failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or MSC failed to warn MS. POSTAR despite knowing of the dangers.

81.   These dangerous conditions existed for a period of time before the incident.

82.   These conditions were neither open nor obvious to MS. POSTAR.

83.   MSC'S breach was the cause in-fact of MS. POSTAR'S great bodily harm in that, but for MSC'S breach her injuries would not have occurred.

84.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

85.   MSC'S breach proximately caused MS. POSTAR great bodily harm in that the incident that occurred was a foreseeable result of POSTAR'S breach.

86.   As a result of MSC'S negligence, MS. POSTAR has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, and loss of the value of her vacation, cruise, and transportation costs.

87.   The losses are permanent and/or continuing in nature.

88.   MS. POSTAR has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JOSELYN POSTAR, demands Judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MS. POSTAR will suffer and incur in the future, as a result of MS. POSTAR'S bodily injury,

pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, lost earning capacity, loss of the value of her vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY**

89.    MS. POSTAR hereby adopts and re-alleges each and every allegation in paragraphs 1 through 36, as if set forth herein.

90.    At all times material hereto, MSC owed a duty to its passengers, and in particular a duty to MS. POSTAR, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 19 in the instant Complaint, as well as to design and install reasonable safeguards.

91.    Furthermore, MSC knew or should have known of these dangerous conditions for the reasons discussed in paragraph 21 of this Complaint.

92.    At all times material hereto, MSC participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which MS. POSTAR was injured into the channels of trade, and/or MSC approved of the subject vessel's design, including the design of the subject area and the vicinity.

93.    At all times material hereto, MSC manufactured, designed, installed, and/or approved of the *Divina*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to MS. POSTAR, to design, install and/or approve of the subject area and the vicinity without any

defects.

94.    At all times material hereto, MSC through its agents and/or employees who were acting in the course and scope of their employment and/or agency with MSC, designed, installed, and/or approved of the subject area and the vicinity involved in MS. POSTAR'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

95.    MSC provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

96.    MSC maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Divina*, during the new build process.

97.    MSC has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

98.    MSC has the right to inspect and reject design elements before taking possession of the ship.

99.    However, MSC permitted the dangerous conditions to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

100.    The design flaws that made the subject area and the vicinity involved in MS. POSTAR'S incident unreasonably dangerous were the direct and proximate cause of her injuries.

101.    MSC is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in MS. POSTAR'S incident, which it knew or should have known of.

102.    MSC failed to correct and/or remedy the defective conditions, despite the fact that

MSC knew or should have known of the danger(s).

103.  MSC'S breach was the cause in-fact of MS. POSTAR'S great bodily harm in that, but for MSC'S breach her injuries would not have occurred.

104.  Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

105.  MSC'S breach proximately caused MS. POSTAR great bodily harm in that the incident that occurred was a foreseeable result of MSC'S breach.

106.  As a result of MSC'S negligence, MS. POSTAR has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of independence, expense of hospitalization, medical and nursing care and treatment, loss of independence, and loss of the value of her vacation, cruise, and transportation costs.

107.  The losses are permanent and/or continuing in nature.

108.  MS. POSTAR has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JOSELYN POSTAR, demands Judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MS. POSTAR will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, lost earning capacity, loss of the value of her vacation, cruise, and transportation costs, loss of important bodily functions, and

loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**NEGLIGENCE FOR THE ACTS OF MSC'S CREW, STAFF, EMPLOYEES, AND/OR**
**AGENTS, BASED ON VICARIOUS LIABILITY**

109.  MS. POSTAR hereby adopts and re-alleges each and every allegation in paragraphs 1 through 36, as if set forth herein.

110.  MSC owed a duty to exercise reasonable care under the circumstances for the safety of its patrons.

111.  The crew member(s) who negligently failed to secure a subject slip-resistant floor-mat on the subject bathroom flooring, as well as the people who were working in and/or who were and/or should have been responsible for inspecting, maintaining, cleaning, and/or securing the subject area, were agents of MSC, and specifically included the crew member(s) who improperly failed to place a proper floor-mat, for the following reasons:

a.     They were the staff and/or employees of MSC, and/or were MSC'S agents, apparent agents, and/or servants; and/or

b.     These staff, employees, and/or agents were subject to the right of control by MSC; and/or

c.     These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.     MSC acknowledged that these staff, employees, and/or agents would act on MSC'S behalf, and they accepted the undertaking.

112.  MSC is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in paragraph 19 of the instant Complaint.

113.  MSC'S breach was the cause in-fact of MS. POSTAR'S great bodily harm in that, but for MSC'S breach her injuries would not have occurred.

114.  Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

115.  This negligence proximately caused MS. POSTAR great bodily harm in that, but for this negligence, MS. POSTAR'S injuries would not have occurred.

116.  As a result of MSC'S negligence, MS. POSTAR has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of her vacation, cruise, and transportation costs.

117.  The losses are permanent and/or continuing in nature.

118.  MS. POSTAR has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JOSELYN POSTAR, demands Judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MS. POSTAR will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, and lost earning capacity, loss of the value of her vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT VII**
**VICARIOUS LIABILITY AGAINST MSC FOR THE NEGLIGENCE OF**
**THE SHIP'S MEDICAL STAFF**

119.  MS. POSTAR hereby adopts and re-alleges each and every allegation in paragraphs 1 through 36, as if set forth herein.

120.  MSC, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

121.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

122.  At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full-time employees and agents of MSC, subject to its direction and control, who were engaged in the activity of discharging MSC'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

123.  MSC is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

124.  MSC directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

125.  MSC created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

126.  MSC pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

127.  MSC collected all medical revenues directly from passengers and generated a profit

on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

128. MSC'S marketing materials described the infirmary in proprietary language.

129. The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by MSC.

130. MSC provided the ship's medical personnel certain forms of liability insurance and/or indemnification rights.

131. At all times material hereto, MSC, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

   a. Failing to reasonably medically disembark MS. POSTAR, including, but not limited to, by failing to give her priority disembarkation status when she reached the port;

   b. Failing to timely call an ambulance and/or to otherwise arrange for MS. POSTAR to receive timely treatment for her injuries;

   c. Failing to promptly provide MS. POSTAR with proper medical and/or first aid care and attention;

   d. Failing to timely and properly diagnose and/or assess MS. POSTAR'S condition;

   e. Failing to timely and properly attend to MS. POSTAR, to her injuries, and to her pain;

f.   Failing to provide reasonable medical and/or first aid care;

g.   Failing to timely and properly treat and care for MS. POSTAR;

h.   Failing to timely and properly examine MS. POSTAR'S injuries;

i.   Failing to take proper measures to secure proper treatment for MS. POSTAR, including unreasonably delaying taking measures to secure such proper treatment;

j.   Failing to properly bring and/or arrange for MS. POSTAR to be brought to an emergency room within a reasonable amount of time; and/or

k.   Failing to give MS. POSTAR proper discharge instructions.

132.   Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

133.   Under the doctrine of Respondeat Superior, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

134.   MSC is therefore vicariously liable for all injuries and damages sustained by MS. POSTAR as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

135.   At all times material hereto, the aforementioned acts and/or omissions on the part of MSC'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

136.   The negligence of MSC'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused MS. POSTAR great bodily harm in that, but for MSC

negligence, MS. POSTAR'S injuries would not have occurred and/or said injuries would have been substantially lessened.

137.  MSC, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

138.  As a result of MSC'S negligence, MS. POSTAR has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, and loss of future earning capacity, loss of the value of MS. POSTAR'S vacation, cruise, and transportation costs.

139.  The losses are permanent and/or continuing in nature.

140.  MS. POSTAR has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JOSELYN POSTAR, demands Judgment against Defendant, MSC Cruises, S.A., for damages suffered and costs incurred, as well as for damages and costs that MS. POSTAR will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, and lost earning capacity, loss of the value of her  vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT VIII
## APPARENT AGENCY
## FOR THE ACTS OF THE SHIP'S MEDICAL STAFF

141.  MS. POSTAR hereby adopts and re-alleges each and every allegation in paragraphs 1 through 36, as if set forth herein.

142.  At all times material hereto, the ship's medical staff represented to MS. POSTAR and to the ship's passengers as employees and/or agents and/or servants of MSC, in that:

a.  Medical staff wore a ship's uniform;

b.  Medical staff ate with the ship's crew;

c.  Medical staff was under the commands of the ship's officers;

d.  Medical staff worked in the ship's medical department;

e.  Medical staff was paid a salary by MSC;

f.  Medical staff worked aboard the vessel; and/or

g.  Medical staff spoke to MS. POSTAR as though they had authority to do so by MSC.

143.  In addition, MSC further represented to MS. POSTAR that the vessel's medical staff were agents and/or employees of MSC through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as "MSC *Divina's* Medical Center/our infirmary/our medical center," and through encouraging MS. POSTAR to make use of "its" infirmary/medical center if she was in need of medical attention.

144.  Furthermore, at no time did MSC represent to MS. POSTAR in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff were not agents or employees of MSC.

145.  At all material times, MS. POSTAR reasonably relied on the representations to MS. POSTAR'S detriment that the medical staff were employees, and/or agents, and/or servants of

MSC.

146. It was reasonable to believe that the medical staff were MSC'S agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by MSC.

147. This reasonable reliance was detrimental because it delayed MS. POSTAR from receiving proper medical treatment and/or MS. POSTAR would not have gone on the subject cruise with MSC had she known that the medical staff on the ship were not MSC'S agents.

148. MSC is estopped to deny that the medical staff were its apparent agents, and/or apparent employees, and/or apparent servants.

149. MSC had a duty to provide MS. POSTAR with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide MS. POSTAR with reasonable care under the circumstances.

150. MS. POSTAR'S injuries were aggravated due to the fault and/or negligence of MSC through the acts of its apparent agents as follows:

    a.  Failing to reasonably medically disembark MS. POSTAR;

    b.  Failing to timely call an ambulance and/or to otherwise arrange for MS. POSTAR to receive timely treatment for her injuries;

    c.  Failing to promptly provide MS. POSTAR with proper medical and/or first aid care and attention;

    d.  Failing to timely and properly diagnose and/or assess MS. POSTAR'S condition;

    e.  Failing to timely and properly attend to MS. POSTAR, her injuries, and her pain;

    f.   Failing to provide reasonable medical and/or first aid care;

    g.   Failing to timely and properly treat and care for MS. POSTAR;

    h.   Failing to timely and properly examine MS. POSTAR'S injuries;

    i.   Failing to take proper measures to secure proper treatment for MS. POSTAR, including unreasonably delaying taking measures to secure such proper treatment;

    j.   Failing to properly bring and/or arrange for MS. POSTAR to be brought to an emergency room within a reasonable amount of time; and/or

    k.   Failing to give MS. POSTAR proper discharge instructions.

151.  Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

152.  As a result of MSC'S negligence, MS. POSTAR has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, loss of future earning capacity, loss of the value of her vacation, cruise, and transportation costs.

153.  The losses are either permanent or continuing in nature.

154.  MS. POSTAR has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JOSELYN POSTAR, demands Judgment against Defendant, MSC, S.A., for damages suffered and costs incurred, as well as for damages and costs that MS. POSTAR will suffer and incur in the future, as a result of her bodily injury, pain and suffering,

disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value her vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT IX**
**ASSUMPTION OF DUTY FOR THE**
**NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**

155.  MS. POSTAR hereby adopts and re-alleges each and every allegation in paragraphs 1 through 36, as if set forth herein.

156.  MSC owed MS. POSTAR the duty to exercise reasonable care under the circumstances for the safety of its passengers.

157.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

158.  MSC elected to discharge this duty by having MS. POSTAR seen by its own ship's physicians and/or other crew members.

159.  As such, MSC voluntarily assumed a duty for the benefit of MS. POSTAR to use reasonable care in the provision of medical services to MS. POSTAR.

160.  At all times material hereto, MSC was careless, negligent, and breached its duties due to the fault and/or negligence of MSC through the acts of its apparent agents by:

    a.  Failing to reasonably medically disembark MS. POSTAR;

    b.  Failing to timely call an ambulance and/or to otherwise arrange for MS. POSTAR to receive timely treatment for her injuries;

    c.  Failing to promptly provide MS. POSTAR with proper medical and/or first

aid care and attention;

d.   Failing to timely and properly diagnose and/or assess MS. POSTAR'S condition;

e.   Failing to timely and properly attend to MS. POSTAR, her injuries, and her pain;

f.   Failing to provide reasonable medical and/or first aid care;

g.   Failing to timely and properly treat and care for MS. POSTAR;

h.   Failing to timely and properly examine MS. POSTAR'S injuries;

i.   Failing to take proper measures to secure proper treatment for MS. POSTAR, including unreasonably delaying taking measures to secure such proper treatment;

j.   Failing to properly bring and/or arrange for MS. POSTAR to be brought to an emergency room within a reasonable amount of time; and/or

k.   Failing to give MS. POSTAR proper discharge instructions.

161.   At all times material hereto, the aforementioned acts or omissions on the part of MSC fell below the standard of care.

162.   MSC'S negligence proximately caused MS. POSTAR great bodily harm in that, but for MSC'S negligence, MS. POSTAR'S injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

163.   MSC, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

164.   As a result of MSC'S negligence, MS. POSTAR has suffered severe bodily injury

resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, loss of future earning capacity, loss of the value of her vacation, cruise, and transportation costs.

165. The losses are permanent and/or continuing in nature.

166. MS. POSTAR has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, JOSELYN POSTAR, demands Judgment against Defendant, MSC CRUISES, S.A., for damages suffered and costs incurred, as well as for damages and costs that MS. POSTAR will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, lost earning capacity, loss of the value of her vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, JOSELYN POSTAR, demands trial by jury on all issues so triable.

**Dated:** July 12, 2022.

Respectfully submitted,

*/s/ Spencer M. Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Riana S. Maryanoff, Esq.**
Florida Bar No.: 1024768
rmaryanoff@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiff***